**WESTINGHOUSE ELECTRIC CORPORATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 14176.**

United States Court of Appeals Seventh Circuit.

Dec. 5, 1963.

Owen Fairweather, Walter L. Adams, Harvey M. Adelstein, Chicago, Ill., for petitioner; Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., of counsel.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Stephen B. Goldberg, Atty., N. L. R. B., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Herman M. Levy, Atty., N. L. R. B., for respondent.

Before HASTINGS, Chief Judge, and DUFFY and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

This case is before the Court on the petition of Westinghouse Electric Corporation to review and set aside an order of the National Labor Relations Board issued against the petitioner, and upon the Board's cross-petition for the enforcement of that order. The Board's decision and order are reported at 141 NLRB No. 61.

Westinghouse maintains a manufacturing and repair plant at Chicago, Illinois. The production, maintenance and service employees at this plant are represented by Local 1105, United Electrical, Radio and Machine Workers of America. During the period here involved the collective bargaining agreement between Westinghouse and the Union contained no contractual obligation or commitment to arbitrate grievances but did contain other provisions relating to grievance procedure. The agreement provided, among other things, that:

"4. (a) There will not be more than three steps in the local grievance procedure. The immediate Local representative and the immediate supervisor will discuss and

make an effort to resolve grievances at the first step.

\* \* \* \* \* \*

"(b) A Local representative will present the grievance to the designated local Management representative at each step. \* \* \* "

The Board found that Westinghouse violated Section 8(a) (5) and (1) of the National Labor Relations Act [1] "when it refused to bargain collectively with the Union by unilaterally adding to the [contractual] grievance procedure a preliminary step permitting the adjustment of grievances without affording the Union the opportunity to be present at such adjustment". The Board's order requires that petitioner cease and desist from so refusing to bargain collectively and in any like or related manner restraining or coercing employees in the exercise of their rights guaranteed by Section 7 of the Act.[2] The order affirmatively directs the petitioner to rescind its unilateral addition of the preliminary step and to post the usual notices.

The Board's conclusion that petitioner violated Section 8(a) (5) and (1) of the Act is predicated upon its finding that Westinghouse changed the contractual grievance procedure, without bargaining thereon and in impairment of the Union's Section 9(a) right to be given an opportunity to be present at the adjustment of employee grievances by the management representative, when on June 26, 1962, Westinghouse assembled the employees in departmental meetings and a statement prepared by the plant's industrial relations manager, Mr. L. E. Kivela, was read to the employees by a plant foreman.[3] The statement contained the following introductory matter which the Board relies

upon as effecting, *ipso facto,* an unlawful and unilateral change in or addition to the contractual grievance procedures and constituting an unfair labor practice in violation of Section 8(a) (5) and (1) of the Act:

"Last time we discussed what a grievance is. Today we want to discuss how the grievance procedure should work.

"First, if an employe feels aggrieved, he should contact his foreman and discuss the problem with him. The foreman is the Management representative responsible for the area where his employees work so he should naturally be contacted first.

"If the foreman and the employe do not reach mutual accord, then the employe may request his foreman for the presence of his steward. Following this discussion the employe or steward may submit a written grievance to the foreman. \* \* \* "

The charge upon which the Board issued the complaint in this proceeding was filed by the Union on July 13, 1962. At employee work meetings in August the petitioner denied it had changed the grievance procedure. It pointed out:

"Management still feels it is good common sense for employes to discuss their possible complaints or problems with their foremen before an actual grievance affecting the employes arises.

\* \* \* \* \* \*

Currently many employes discuss problems, whether actual or potential, with their foreman on a variety of subjects such as pay shortages,

---

1. 29 U.S.C.A. § 158(a) (5) and (1).

2. All references herein to the "Act" are to the National Labor Relations Act, as amended. 29 U.S.C.A. § 151 et seq.

3. At June 21, 1962, work place meetings a letter had been read to the employees pointing out, among other things, how delays in handling grievances, which had been complained of by the Union, might be avoided if the written grievances were

made more specific and contained clear and complete information so that they would not have to be returned for the specific information necessary to an intelligent discussion of the issues. The petitioner objected to the presentation of grievance forms so vague in content that at every step of the grievance procedure, the discussion centered around different points from those considered at the previous step.

safety hazards, classifications of work or other conditions. Although local management feels that it is logical, common sense approach to see the foremen first in matters of this sort, employes have never been denied the presence of a bargaining representative if they so desire, nor has there been any intention to deny the employe union representation in the future.

"Local management certainly does not intend through this meeting to repeat everything that was said in the previous work place meetings. However, we did want to correct any impression you may have received or been given that management has changed the grievance procedure through making observations on how the present procedure should work in order to be more effective."

The industrial relations manager, Mr. Kivela, who had prepared the letters or statements read to the employee meetings, testified that he had no intention to make any change in the existing contractual grievance procedure. And there is no evidence in the record that after the June 26, 1962, statement any change occurred in the processing or handling of grievances—or that any grievance was adjusted without a Union representative being given the opportunity to be present.

There is employee testimony in the record to the effect that after the June 26th meetings employees went to their Union steward only if they had an actual grievance to be presented but went to their foreman about other things, including "gripes" and work problems. There is no evidence, however, that any grievance was adjusted in a manner different from that provided by the contractual grievance procedure or in violation of Section 9(a). And mere conjecture or speculation cannot be made to substitute for evidence.

In our opinion there is no substantial evidence in the record to support a finding or conclusion that there was any intention or any attempt to change the contractual grievance procedure much less that a change had been effected. This being so it appears that the statement the Board relies upon has not only been wrenched from its context and the factual setting involved but also has been accepted as precipitating a *fait accompli*. It was merely part of an attempt by the petitioner to explain how it believed the contractual grievance procedure should be used to be more effective. Restored to its proper setting it establishes no foundation for the conclusion the Board reached. And in the posture in which the matter reaches us it is not of significant import whether petitioner's interpretation of the scope of the contractual grievance procedure or of any relevant provisions of the Act were correct. In so far as the record discloses nothing happened as a result thereof which establishes a departure from the contract provisions or a violation of law. Whatever basis for speculation the statement may furnish when viewed alone is dispelled when it is considered in the light of the disclosures of the record considered as a whole. Consistent with the guiding principles furnished us by Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, we "cannot conscientiously find that the evidence supporting [the Board's] decision is substantial, when viewed in the light that the record in its entirety furnishes, * * *."

In view of the conclusion we have reached it becomes unnecessary for us to discuss or express any opinion concerning the other issues raised by the contentions advanced by the petitioner and the Board.

The petitioner's petition is granted, the cross-petition of the Board for enforcement of its order is denied, and the order is set aside.

Order set aside.